Perry A. Hood #1112280
_____
**Name and Inmate Booking Number**

Northern Nevada Correctional Center (NNCC)
_____
**Place of Confinement**

P.o. Box 7000.
_____
**Mailing Address**

Carson City, NV 89702
_____
**City, State, Zip Code**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Perry A. Hood
_____,
                    **Plaintiff**

**vs.**

(1) John J. Friel, Jr.
_____

(2) John S. Pecutt, Lcsw
_____

(3) Chris Arabie
_____,

(4) _____,

(5) _____,
                    **Defendant(s).**

Case No. _____
(To be supplied by Clerk of Court)

## CIVIL RIGHTS COMPLAINT
## BY AN INMATE

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

☒ Jury Trial Demanded

### A.   JURISDICTION

1)   This Court has jurisdiction over this action pursuant to:
  ☒ 28 U.S.C. § 1343(a)(3); 42 U.S.C. § 1983
  ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)
  ☐ Other: _____

2)   Institution/city where Plaintiff currently resides: NNCC, Carson City, NV

3)   Institution/city where violation(s) occurred: (Tonopah, NV) Round Mtn, Nevada
                   Court

**B.    DEFENDANTS**

1.  Name of first Defendant: John J. Friel, Jr                . The first Defendant is employed as:
Deputy DA, Prosecutor, 2013                at Nye County
   **(Position of Title)**                          **(Institution)**

2.  Name of second Defendant: John S. Pacult, LCSW          . The second Defendant is employed as:
Psychosexual Evaluator, 2013              at Nye County
   **(Position of Title)**                          **(Institution)**

3.  Name of third Defendant: Chris Arabia              . The third Defendant is employed as:
Public Defender, 2013                     at Nye County
   **(Position of Title)**                          **(Institution)**

4.  Name of fourth Defendant: _____. The fourth Defendant is employed as:
_____ at _____
   **(Position of Title)**                          **(Institution)**

5.  Name of fifth Defendant: _____. The fifth Defendant is employed as:
_____ at _____
   **(Position of Title)**                          **(Institution)**

If you name more than five Defendants, answer the questions listed above for each additional Defendant on a separate page.

**C.    NATURE OF THE CASE**

Briefly state the background of your case.

Apparent violations of Plaintiff's 4th, 6th, 8th, and 14th Amendment
rights. Apparent misconduct by the Prosecution, defamatory and inadequate
Psychosexual Evaluation, and incompetent/ineffective representation by
Plaintiff's Public Defender, excessive bail (8th Amendment).

2

### D.    CAUSE(S) OF ACTION

### CLAIM 1

1. State the constitutional or other federal civil right that was violated: 14th Amendment (and 5th)

2. **Claim 1. Identify the issue involved. Check only one. State additional issues in separate claims.**

   - ☐ Basic necessities
   - ☐ Medical care
   - ☐ Mail
   - ☐ Disciplinary proceedings
   - ☐ Exercise of religion
   - ☐ Property
   - ☐ Access to the court
   - ☐ Excessive force by officer
   - ☐ Retaliation
   - ☐ Threat to safety
   - ☒ Other: Prosecutorial misconduct, due process violations

3. **Date(s) or date range of when the violation occurred:** Jan. - Dec. 2013

4. **Supporting Facts: State as briefly as possible the FACTS supporting Claim 1. Describe exactly what each specific defendant (by name) did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.**

   **Ground 1: 14th Amendment Violations; prosecutorial misconduct:**

   1: Fraudulent Charge pursuant to FRCP 60-D-3 -- John Fries, Jr.

   During the summer of 2011 Plaintiff took many photographs of a nine-year-old girl (while experimenting with a new digital camera) who agreed to model for him. During all photos the model was fully clothed in appropriate summer attire.

   Some photos were portrait pictures of the model's head only, using the burgundy-colored carpet as a backdrop. When it became obvious that dog hair and urine were present in the carpet, the setting was moved to a bed, using a black sheet as the new backdrop.

   Several photos then were taken replicating scenes from early melodramas; some involved the model appearing to be bound. Plaintiff agrees that those photos were in poor taste, but **none** of the photos were intended to portray sexuality in any way. The prosecution chose to ignore the Plaintiff's truthful explanation and assume Plaintiff's sexual intent. A charge of "sexual portrayal" of a minor child was the result.

Plaintiff was charged with a violation of NRS 200.710, "Use of a minor in producing pornography or as a subject of sexual in performance".

The photos taken by Plaintiff *clearly* were not "pornography", nor were they arguably a "sexual portrayal", as no sexual portrayal was intended or depicted. NRS 200.710 is vague on a definition of "sexual portrayal", and the Prosecution's interpretation was inaccurate and prejudicial.

**United States v. Bass**, 404 U.S. 336, 348, 92 S. Ct. 515, 30 L. Ed. 2d 488 (1971): Where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.

**United States v. Polizzi**, 549 F. Supp. 2d 308, 317 (2008): A canon of statutory interpretation, the rule of lenity requires that in construing an ambiguous criminal statute, a court should resolve any ambiguity in favor of the defendant.

Plaintiff's Prosecution apparently failed to recognize and apply the principal of lenity and chose to ignore Plaintiff's truthful account of the motivation for his photos.

— 3-A-

The prosecution apparently automatically interpreted a female being bound as "sexual" in nature. Out of curiosity, from February 2017 until August 2020, Plaintiff kept a record of movie and TV show scenes involving bondage of females. Ages ranged from six to the 40's; most females were teens or in their 20's. When the total reached 146 (on 8/11/20), Plaintiff stopped record-keeping. **Of the 146 scenarios, fewer than a dozen had apparent overt sexual intent.**

Had the prosecution assumed innocence and accepted the Plaintiff's truthful explanation for the photos, an arrest never would have taken place. And, had his Public Defender provided an effective defense, Plaintiff would not have been likely to have received 10-year-to-life sentence for a **crime that he did not commit.**

2.      Plaintiff was not shown a valid Nye County search warrant on the day that his home was searched, a violation of NRS 179.075.

3.      Plaintiff was not given a copy of a valid Nye County search warrant, also a violation of NRS 179.075.

4.      Plaintiff's bail was set a $1,000,000 (one million dollars), clearly an exorbitant amount—and a violation of the 8th Amendment to the U.S. Constitution [see Ground 3] – considering the zero flight risk, his position in a public school system, and the alleged offense: taking a photograph of a nine-year-old child.

5.      Plaintiff was not given a copy of the inventory of items seized during the search of his home, also a violation of NRS 179.075.

6.      The Psychosexual Evaluation, ordered by the Prosecution, does not meet the standards outlined in NRS 176.139(3)—it contains no standardized assessment instruments, erroneously labels Plaintiff with the defamatory term "pedophile" without any reference to the criteria defined by the American Psychiatric Association's *Diagnostic and Statistical Manual* for that diagnosis, and Mr. Pacult's conclusions depend upon generalizations and conjecture.

7.    The Presentence Evaluation Report (PSI) was given to Plaintiff and his Public Defender **15 minutes** before Plaintiff's sentencing hearing, a violation of NRS 176.153, which required that the defense receive the PSI **at least seven (7) days** prior to the sentencing hearing [Fraud upon the court—malfeasance].

8.    Plaintiff's Plea Agreement was coerced through the threat that, if he went to trial, he would certainly be found guilty and would spend the rest of his life in prison.

9. Plaintiff was told that errors in the PSI could not be challenged and corrected after sentencing. **This is not true**: NRS 176.156(1B) outlines provisions for any PSI changes that might be necessary.

**Federal Rules of Civil Procedure,**

**Rule 60, Relief from a Judgment or Order, (d) – (3):**

**Reason 3—Fraud, Misrepresentation, Other Adversary Misconduct**

Relief from a judgment or order may be permitted where: (1) the moving party possessed a meritorious claim at trial, (2) the adverse party engaged in fraud, misrepresentation, or other misconduct, and (3) that mischief prevented the moving party from fully and fairly presenting its case during trial.

The prosecution's representatives took unfair advantage of Plaintiff's lack of knowledge of Nevada law and court procedures, and Plaintiff's very poor and ineffective counsel by Chris Arabia, Plaintiff's Public Defender, by blatantly lying to the Plaintiff in at least two ways:

A.  The plea agreement document that Plaintiff was coerced to sign stated that no appeal would be possible if Plaintiff signed—**NOT TRUE**. His Public Defender could have, and should have, filed a direct appeal.

— 3-C —

B. When Plaintiff protested many aspects of the deeply flawed Presentence Investigation Report (PSI), Plaintiff was informed by letter from the PSI writer's supervisor that the PSI could only be altered or corrected prior to, or at, sentencing—**NOT TRUE**.

**Psychosexual Evaluation Report (PER)** John Pacult, LCSW

During his 40-plus-year career as a Clinical and School Psychologist, Plaintiff participated in over 4,500 evaluations, and as a college instructor (part-time) for 36 years, he taught individual assessment techniques.

The aforementioned Presentence Investigation Report (PSI) is based almost entirely upon the content and conclusions of a Psychosexual Evaluation Report (PER) conducted by a county-paid social worker, John Pacult, LCSW, during October 2013. The totally erroneous and defamatory PER contains at least four serious flaws; in fact, it reads as if its conclusions were dictated by the prosecution and subsequently forced the evaluator to try to justify them:

1. The PER purports to be based upon objective and/or standardized measures but, in fact, **includes none**. It is entirely subjective, a violation of NRS 176.139(3);

2. The PER identifies Plaintiff as a "pedophile", a diagnosis that requires documentation of a history of related behavior. **The PER contains no historical evidence**;

3. A thorough clinical evaluation includes supporting interviews with others who are familiar with the person being evaluated. **The PER contains no supporting interview results**, and

4. The PER violates one of the most important principles of individual clinical evaluations: **One cannot generalize from group data to individuals, or vice versa. The PER's conclusions and recommendations rely *entirely* upon generalizations.**

— 3 - D —

### Subsequent PER

The seriously flawed October 2013 PER (and hence PSI) has been refuted since by an independent Psychosexual Evaluation (Report dated 2/12/19) by a qualified and experienced clinical psychologist, Earl S. Nielsen, PhD, using a variety of objective measures. **The initial, seriously flawed PER of October 2013 should be disregarded, along with the defamatory PSI that it supports!**

Despite the prosecution's attempts to present Plaintiff as such, and his public defender's unwillingness to defend him, Plaintiff has never been sexually interested in children and never will be. When he tried to speak up for himself in court, (when his Public Defender wouldn't) the judge stopped him, saying that only his attorney could speak for him. (See copy of court transcript, page 4, lines 14-21).

**United States v. Duarte-Higareda,** (13 F. 3d 1000, 1003 (9th Cir. 1997): Failure to determine if defendant voluntarily, knowingly and intelligently waived jury trial was structural error requiring reversal.

— 3-E —

The Prosecution (with the possible complicity of Plaintiff's Public Defender) took unfair advantage of Plaintiff's lack of knowledge of Nevada statutes, and his (obviously misplaced) trust in the integrity of Counsel, to coerce a plea agreement (through a threat). Plaintiff did **not** (and still does **not**) feel that he had committed an alleged crime and did **not** plead "guilty". He did plead "no contest", with **no** guidance from his Counsel, to try to end the extreme stress he was experiencing from his arrest (his first) and the many losses that that arrest occasioned; Plaintiff did **not** know that a "no contest" plea would be viewed as a different form of a "guilty" plea. The net result was multiple violations of Plaintiff's constitutional rights and loss of his freedom.

**Berger v. United States,** 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935): A prosecutor should "prosecute with earnestness and vigor" but is not to use "improper methods calculated to produce a wrongful conviction".

**Tomkins v. Missouri,** 323 U.S. 485, 487, 65 S. Ct. 370, 89 L. Ed. 407 (1945):  "[W]e can hardly demand of a layman and pauper who draws his petition behind prison walls the skill of one trained in the law."

**Brady v. United States,** 397 U.S. 742, 750, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970): The state may not induce a guilty plea by threatening a defendant with physical harm *or by mental coercion overbearing a defendant's will*. [emphasis added]

In sum, the Prosecution, with the knowing assistance of the court-appointed (county-hired) Public Defender, conspired to violate Plaintiff's 4th, 5th, 6th, 8th, and 14th Amendment rights guaranteed by the U.S. Constitution. Plaintiff's 10-to-life sentence was imposed due to his action that arguably was *not* a crime, nor was his photo-taking ever intended to be. Relief is due Plaintiff at the discretion of the Court.

— 3-F —

## CLAIM 2

1. State the constitutional or other federal civil right that was violated: _6th Amendment_

2. **Claim 2.** Identify the issue involved. Check only one. State additional issues in separate claims.

   ☐ Basic necessities      ☐ Medical care      ☐ Mail

   ☐ Disciplinary proceedings    ☐ Exercise of religion    ☐ Property

   ☐ Access to the court      ☐ Excessive force by officer    ☐ Retaliation

   ☐ Threat to safety      ☒ Other: _Ineffective, Incompetent Counsel_

3. Date(s) or date range of when the violation occurred: _Jan. – Dec. 2013_

4. **Supporting Facts:** State as briefly as possible the FACTS supporting Claim 2. Describe exactly what each specific defendant (by name) did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

**Ground 2:** 6th Amendment violations—Incompetent and Ineffective Assistance of Counsel

[malpractice violating the Plaintiff's 6th, 8th, and 14th Amendment rights] _Chris Arabia_

         Facts and arguments supporting the presentation of incompetent and Ineffective

assistance of Counsel as part of the basis for this action are as follows:

Public Defender #1, Chris Arabia:

- Failed to challenge that law enforcement did not show Plaintiff a valid Nye County

  search warrant on January 23, 2013, when his home was searched and Plaintiff was

  arrested, as required by law (NRS 179.075);

- Failed to challenge Plaintiff's not being provided a copy of the above-referenced search

  warrant as required by law (also NRS 179.075);

- Failed to challenge said search warrant's being returned to the issuing judge in a timely manner as required by law;

- Failed to challenge the prosecution's assertion that one or more photos Plaintiff took were "sexual portrayals", totally ignoring Plaintiff's truthful explanation of the intent of the photos;

- Failed to force the prosecution to explain/justify the aspects(s) of the photos(s) that would represent a "sexual portrayal" as the girl subject was fully clothed and not sexually suggestive in any way;

- Failed to challenge the outrageous and unnecessary bail amount of one million dollars ($1,000,000); did not file a motion to reduce or eliminate bail;

- Failed to file for summary dismissal of the primary charge (as suggested by the Nevada Supreme Court's guidelines);

- Failed to inform Plaintiff of his right to a jury trial and to obtain a waiver to a jury trial **in writing** as required by **Duncan v. Louisiana**, 391 U.S. 145, 153, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968);

- Failed to challenge the content and conclusions of the deeply flawed Psychosexual Evaluation Report completed by a licensed social worker (John Pacult, LCSW) and requested and paid for by the prosecution;

- Failed to investigate or challenge the credentials of the evaluator hired by the prosecution to do the Psychosexual Evaluation Report (PER);

- Failed to address the lack of objective and standardized measures used to formulate the PER;

– 4-A –

- Failed to engage any expert witness/evaluator to contest or refute the bungled Psychosexual Evaluation Report by a social worker hired by the prosecution (John Pacult, LCSW) ;

The failure to challenge the poorly conceived and written PER may have severely affected any subsequent Pardons Board and/or Parole Board decisions. More qualified and experienced **psychologists** were available in Nevada to the prosecution and defense.

- The prosecution erred by failing to provide a copy of the witness/victim statement to Plaintiff's Counsel for his review, records, and possible challenge. Since the girl in the photos and her parents were well known to Plaintiff and had made no complaint to Plaintiff or to the authorities, it seems likely that she did not view herself as a "victim" until being coerced by the investigating officer(s) into being one. At no time was she coerced or sworn to secrecy while the pictures were taken and being viewed in the computer;

- Plaintiff's Counsel erred by not insisting upon obtaining a copy of the girl's statement for review, and not allowing Plaintiff to face his "accuser" as required by the 6th Amendment. Also, Counsel did not inform Plaintiff that such a statement is critical to a reasonable defense. Counsel persuaded Plaintiff to waive discovery, with no explanation of the possible implication of that action for Plaintiff's overall case;

- **Bragg v. Galzoa**, 242 F. 3de 1082 (9th Cir. 2011): "Defense counsel's duties include a duty to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." Counsel did no such investigation and did not challenge the prosecution's case in any way;

— 4-B —

- Failed to confront the social worker's having identified Plaintiff as a "pedophile" in his report, despite no references to the DSM-IV criteria for that diagnosis and no supporting evidence or history;

- Failed to challenge the content and conclusions of the equally flawed, defamatory Presentence Investigation Report (PSI) that was largely based upon the flawed Psychosexual Evaluation Report (that has since been refuted by the 10/29/18, 12/12/18, 2/10/18 evaluation by licensed Clinical Psychologist, Earl S. Nielsen, PhD, report dated 2/12/19);

- Failed to address the serious issue of **the PSI being given to the defense about 15 minutes before the sentencing hearing**, contrary to state law at the time that required a minimum of seven (7) days lead time between presenting the PSI to the defense and the sentencing hearing (NRS 176.153). **This apparent malfeasance by the prosecution (prosecutorial misconduct) has been sufficient in other cases to result in dismissal of charges**;

- Failed to suggest/consider a post-sentencing appeal based upon the above unethical and/or illegal actions by the prosecution;

- Failed to adequately address counsel's perception of communication problems between counsel and Plaintiff, and failure to speak up for Plaintiff in court when he wished Counsel to do so (verified by copy of district court transcript);

- Failed to suggest/consider an appeal or a Habeas Corpus action based upon the prosecution's actions, including coercion of a plea agreement through threats of a certain guilty verdict and life sentence if Plaintiff pled "Not Guilty" and requested a trial;

- Failed to explain that Plaintiff's "No Contest" plea would be perceived as an admission of guilt (and not just a neutral statement to try to end the emotional pain and stress that Plaintiff was experiencing)—Plaintiff did **not**, and still does not, feel that he was, in fact, guilty;

The many failures and inactions noted above constitute an egregious violation of Plaintiff's constitutional rights to receive effective legal representation from his court-appointed Public Defender.

**Duncan v. Ornoski,** 528 F. 3d 1222, 1234 (9th Cir. 2008): "This court has repeatedly held that a lawyer who fails to adequately investigate and introduce evidence that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance."

**Kramer v. Kemna,** 21 F. 3d 305, 309 (8th Cir. 1994): "We have stated that failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel."

**Silva v. Woodford,** 279 F. 3d 825, 833 (9th Cir. 2002): "An attorney's failure to prepare for and challenge the testimony of a critical witness may be so unreasonable as to violate both prongs of the *Strickland* test."

**Bragg v. Galaza,** 242 F. 3d 1082 (9th Cir. 2001): Defense counsel's duties include a duty to investigate a petitioner's "most important defense" and to "investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence on the verdict."

— 4-D —

**Lewis v. Johnson**, 359 F. 3d 646 (3rd. Cir. 2004): Counsel was found ineffective for failing to advise the defendant of the right to appeal.

[Plaintiff's second public defender, Steve Evenson, visited once at NNCC (10/17/14) and then did nothing for the next 12 months. Specifically, he failed to rewrite and present the Habeas Corpus petition that Plaintiff had written and submitted, and that the court had refused to consider, because Plaintiff had an "attorney of record" (public defender #1) at the time.]

— 4-E —

During the summer of 2014 the Nevada Supreme Court published a set of guidelines for the ethical conduct of public defenders in Nevada courts. During Plaintiff's prosecution, his court-appointed county-paid public defender violated as many as 26 of those guidelines. Although adherence to those guidelines is not mandatory, Plaintiff's public defender's lack of integrity was apparent in his consistent failure to challenge any of the prosecution's erroneous and/or illegal actions, contrary to many of the Nevada Supreme Court's guidelines.

In sum, both public defenders, court-appointed and Nye County contracted and paid, failed to effectively represent the truth and Plaintiff's presumed innocence of the charge for which he was convicted and is now serving time, losing years of his life and his excellent reputation as a result.

In sum, Plaintiff's court-appointed, county-paid, so-called "public defender" was not just ineffective, but actually was destructive; **he offered no defense at all**. His sole purpose seemed to be to help coerce Plaintiff into accepting a plea agreement, which would save the prosecution (county) the effort and expense of a trial. The coercion was through threats of certainly being found guilty at trial and receiving a guaranteed life sentence. Had Plaintiff had effective counsel, he never would have pled "No Contest" and would have chosen to go to trial, despite the prosecution's threats.

**Their exact words** (which Plaintiff will never forget):

**Public Defender #1: "The truth won't matter."**

**Public Defender #2: "There's no such thing as truth—only perception."**

Also, the Nevada Indigent Defense Commission, in its 5/15/07 recommendations, noted that the public defense delivery system should provide *effective*, efficient, *high quality*, *ethical*, conflict-free legal representation (emphasis added).

— 4-F —

Some previous documents mention that Counsel advised Plaintiff to plead either guilty or no contest. This is not accurate: **Counsel provided no advice whatsoever about a plea**—he said only that, if Plaintiff chose to go to trial, he would certainly be found guilty (according to a threat by the prosecution) and would spend the rest of his life in prison (coercive statement by the prosecution as conveyed to Plaintiff by Counsel). Any plea decision was left up to Plaintiff, **without advice of Counsel**.

_ 4 - G _

## CLAIM 3

1. State the constitutional or other federal civil right that was violated: _8th Amendment_

2. **Claim 3.** Identify the issue involved. Check only one. State additional issues in separate claims.

   ☐ Basic necessities          ☐ Medical care              ☐ Mail

   ☐ Disciplinary proceedings   ☐ Exercise of religion      ☐ Property

   ☐ Access to the court        ☐ Excessive force by officer ☐ Retaliation

   ☐ Threat to safety           ☒ Other: _Excessive bail_

3. Date(s) or date range of when the violation occurred: _Jan 2013_

4. Supporting Facts: State as briefly as possible the FACTS supporting Claim 3. Describe exactly what each specific defendant (by name) did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

   Ground 3: 8th Amendment – excessive bail        <i>John Friel, Jr.</i>

   Bail is found to be excessive when it is higher than reasonably necessary to ensure a defendant's appearance at trial.

   **United States v. Wright,** 483 F. 2d 1068, 1069 (4th Cir. 1973): "It has long been settled that the sole function of bail is to exact assurance from the accused that he will stand trial and submit to sentence if found guilty".

   Plaintiff's bail in 2013 was set at $1,000,000 (one million dollars) despite zero flight risk and his responsible position in his work and community.

   As Prosecutors are often in the position of recommending bail conditions, it seems likely that Plaintiff's Prosecutor was aware of (and may have recommended) the outrageous bail amount.

   The jail was well aware of the egregious stress Plaintiff experienced because of being jailed and prevented from following through on his many work, home, and financial responsibilities – Plaintiff was isolated and subject to a suicide watch during the first week of unnecessary incarceration.

– 5 –

The unfounded charge and forced incarceration have separated Plaintiff from his family and caused irreparable damage to his reputation in the community.

As a public school employee, Plaintiff had no reasonable chance of making bail of that excessive amount and begs the Court's indulgence for redress.

— 5-A —

### E.    PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while incarcerated?    ☐ Yes    ☒ No

2. Has this Court or any other court designated you as subject to "three strikes" under 28 U.S.C. § 1915(g)?    ☐ Yes    ☒ No

3. If you have "three strikes" under 28 U.S.C. § 1915(g), does this complaint demonstrate that you are "under imminent danger of serious physical injury?"    ☐ Yes    ☐ No

### F.    REQUEST FOR RELIEF

Wherefore, Plaintiff requests that this Court grant the following relief:

A. Declare that the Defendants engaged in unethical conduct that violated Plaintiff's rights and freedom;

B. Grant Plaintiff full reimbursement for lost income and resultant debts: $409,000 (please see attached Financial Damages justification);

C. Grant Plaintiff punitive damages as the Court deems fit. Pursuant to the U.S. Supreme Court's decision in Limone v. U.S. (2009), states are liable for at least one million dollars ($1,000,000) for each year of incarceration for unlawful convictions.

D. Grant Plaintiff any other relief to which movant may be entitled.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____        _____
(name of person who prepared or helped          (signature of plaintiff)
prepare this complaint if not the plaintiff)

                                10/6/23
                                _____
                                (date)

– 6 –

## Financial Damages

### (All figures approximate)

Totals:

**Nye Co. Schools Salary:** Plaintiff had planned to work three more years beyond the 2012-13 school year. Being arrested on January 23, 2013 cut that year ½ short. At $75,000/year salary, he lost $262,5000 by his arrest and subsequent incarceration.

$262,500

**Nevada State College:** Plaintiff was teaching online for NSC and planned to continue beyond his retirement from the Nye Co. School District, as he enjoyed the process. Pay each year varied, depending upon the number of courses taught. A conservative figure would be $12,000/year. Over 9 ½ years (to date), lost income is approximately $114,000.

$114,000

Other financial considerations:

1. Plaintiff had about $15,000 in equity in a rented house in Pahrump. After his arrest, the tenants precipitously moved out, and the house reverted to the mortgage company.

$15,000

2. Plaintiff was buying a piece of land in Nova Scotia and had about $12,000 equity so far.

$12,000

3. A vehicle (Dodge Grand Caravan) was nearly paid off. Considering depreciation, I had about $6,000 in equity.

$6,000

$409,000

— 6-A —

[Also, Plaintiff's (now ex-) wife, a Speech Pathologist, and he were
working in the eight northern Nye Co. schools. He was their insured
driver. When he lost his job, she lost hers, too. She would have worked
at least six more years. Salary in 2012-13 was about $54,000.]                    **$324,000**

 

 

The defendants individually and in concert conspired to violate Plaintiff's constitutional
rights.

**Sanders v. United States**, 373 U.S. 1, 22, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963): "An
applicant for [collateral] relief aught not be held to the niceties of lawyers' pleadings."

— 6-B —